**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **RUTH DELIZ,** *Plaintiff,* | : | |
| **Vs.** | : | **C.A. No. 05-183ML** |
| **CFC, LLC, d/b/a WENDY'S, THE PARADIGM GROUP and WENDY'S INTERNATIONAL, INC.,** *Defendants.* | : | |

## PRETRIAL MEMORANDUM

Plaintiff Ruth Deliz ("Deliz") hereby submits this Pretrial Memorandum pursuant to this Court's Amended Pretrial Order, dated July 14, 2006.

## I. PLAINTIFF EXPECTS TO PROVE THE FOLLOWING AT TRIAL

At trial, Deliz will prove through her own testimony that on January 13, 2003 she was a patron at the Wendy's restaurant located in Coventry, Rhode Island. On that date, Deliz was accompanied by her husband, David Morales, as the pair was traveling from Providence, Rhode Island, back to their home in Reading, Pennsylvania.[1] Deliz went into the ladies' room in the Wendy's restaurant and as she was exiting, slipped and fell on a loose grate covering located on the floor of the restroom. The loose grate cover was observed by Deliz's friends Rebecca and Jose Ramos, who traveled to the Wendy's in Coventry shortly after Deliz fell and was injured. Deliz suffered an injury to her right leg, as well as a head injury, which occurred as a result of banging it against the sink as she fell.

Deliz's own testimony and her medical records will show that she was transported via ambulance from Wendy's to Kent Hospital, where she remained for eight days, until January 21, 2003. Deliz's medical records will show that she suffered a right tibia fracture with a minimal

[1] Mr. Morales has since passed away.

displacement of the distal tibia. After her release from the hospital, Deliz was in a long-leg cast and confined to her bed for a period of three months. Deliz, who suffers from scoliosis and muscular dystrophy, endured intense pains and cramps during this period of time and continues to experience pain. She is unable, at the present, to bend her right knee and rotate her right ankle. She cannot walk long distances. She is unable to stand for a long period of time because her right knee starts shaking and she feels a great deal of pain. If she sits for a long period of time, she feels numbness in her right leg. She constantly has pain in her right leg, especially during cold weather, which makes it worse.

Deliz also suffered a head injury causing a blood clot, intense headaches and dizziness. Occasionally, she still suffers from sharp headaches.

Deliz will show that the Defendants knew or should have known of the defective and/or dangerous condition of the drain cover located in the floor of the women's restroom. This particular Wendy's restaurant was under extremely poor management at the time of the incident. Management of the store was under constant criticism from Mr. Mercer, the Director of Operations, concerning the complete lack of attention to caring for and maintaining the restaurant. Mr. Mercer actually reprimanded the General Manager of the Coventry Wendy's for failing to properly maintain the premises. Indeed, only after considerable discovery did Deliz find Defendants' own reports that show Mr. Mercer noted damage and wear to the floor drains in and around the time of Deliz's fall; damage and wear that Mr. Mercer attributed to employees' abuse of the premises. This worn and/or damaged condition created the hazard that precipitated Deliz's fall. Deliz will show that Defendants' failure to fix the condition, or warn members of the public against the hazardous condition renders them liable for her injuries.

Mr. Mercer, Wendy's Director of Operations, testified that an incident report is routinely generated and indeed is required, whenever a patron or employee sustains an injury on the premises. During the course of discovery in this case however, Wendy's did not provide an incident report in connection with Plaintiff's fall, despite the company policy. Nor did Wendy's provide an adequate (or any) explanation as to why no incident report was ever generated, retained or produced.

In connection with the injuries sustained by Deliz, she has incurred medical bills for injuries relating to her slip and fall at Wendy's total approximately $35,214.80.

## II. WITNESSES EXPECTED TO TESTIFY

As stated hereinbefore, Deliz will testify with respect to her fall, her resultant injuries, and the lasting impact her injuries have had upon her overall physical health and her life. In addition to the Deliz, Rebecca and Jose Ramos will testify with respect to their observations of the grate located in the Wendy's ladies' restroom and to their personal knowledge of Deliz's injuries.

## III. EXHIBITS TO BE INTRODUCED AT TRIAL

<u>Medical Records</u>: The following documents will be introduced to illustrate the physical damages sustained by Plaintiff as a result of her fall on Defendant's premises:

1. Commonwealth Orthopaedic Assoc. records;
2. St. Joseph Medical Center records;
    i. Emergency Room records
    ii. Surgical records
    iii. Physical Therapy records
3. Kent County Memorial Hospital records;

4. Western Berks Ambulance records; and

5. Exeter Ambulance Association records.

Medical bills: The following documents will be used to substantiate Plaintiff's monetary damages claim:

1. Commonwealth Orthopaedic Assoc. bills;

2. St Joseph Medical Center bills;

3. Kent County Memorial Hospital bills;

4. Western Berks Ambulance bills; and

5. Exeter Ambulance Association bills.

Wendy's Corporate Records:

1. *Wendy's Operational Procedures Manual*: this document will be used to show the quality assurance standards utilized by Wendy's.

2. *Wendy's Store Policies and Administrative Systems*: this document will be used to illustrate Wendy's protocol with respect to incidents (such as slip and falls) on the premises.

3. *Restore Procedures – Restroom*: this document will be used to show the purpose and use of the floor drain embedded in the floor of the ladies' restroom at Wendy's.

4. *State of Rhode Island "Employer's First Report of Alleged Occupational Injury, Disease or Fatality"*: this document will show the form on which incidents similar to Deliz's slip and fall are routinely recorded and reported to Wendy's management.

5. *Personnel File of Timothy Dillon*: selected portions of this file will be used to show the various sorts of corrective action Wendy's management took against the General Manager of the Coventry Wendy's and will also be used to show the recognition by Wendy's

upper management that the store in question suffered from inadequate maintenance and repair during the period in question.

Deposition of Osto Mercer, Jr.: This document will be used to highlight the anomaly in this case that no incident report came to light in violation of Wendy's company policy that documents Deliz's slip and fall on Wendy's premises.

## IV. MEMORANDUM OF LAW

This is a straightforward premises liability/negligence case involving a slip and fall in the ladies restroom at a restaurant owned and operated by the defendants. It is a well-settled principle of Rhode Island law that business owners owe their business invitees an affirmative duty of care to protect them against unsafe conditions on their premises. *See Kurczy v. St. Joseph Veterans Association, Inc*., 820 A.2d 929, 935 (R.I. 2003). "This legal duty exists because a landowner or possessor who is in control of property is in the best position to protect against harm caused by the use of the property or by any dangerous condition that may arise there." *Konar v. PFL Life Ins. Co.* 840 A.2d 1115, 1123 (R.I. 2004) *referencing* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 57 at 386 (5th ed. 1984). In the context of the instant case, the parties agree that Deliz was a business invitee at Wendy's on the date and time in question. Because of her status as a business invitee, Wendy's owed Deliz a duty to ensure her safety while on the premises. Said duty encompassed the obligation to ensure that the premises were in a safe condition so as to prevent injury.

In order for liability to attach in this, as in any premises liability case, Wendy's, must have had actual or constructive notice of the defective condition that caused Deliz to fall. *See Mead v. Papa Razzi*, 840 A.2d 1103, 1107 (R.I. 2004), *aff'd*, 899 A.2d 437 (R.I. 2006). Constructive notice may be presumed where the evidence suggests that the landowner created

the defective or hazardous condition. *See Mead*, 840 A.2d at 1108, *citing Gregson v. Big Bear Food Corporation*, 84 R.I. 34, 40,121 A.2d 325, 328 (R.I. 1956). In the present case, Deliz will prove that a loose drain cover embedded in the floor of the ladies' restroom caused her to fall. Deliz stated in her deposition that as she was leaving the restroom, she stepped forward and her foot came into contact with something that was not firm. Because of her severe injuries, the cause of Deliz's fall was not the primary focus of attention in the moments directly following the incident. Shortly thereafter however, as Deliz lay in a hospital bed, her friends and her late husband returned to Wendy's to inspect the restroom and discovered that the grate cover over the drain in the ladies' restroom was loose and moved when pressure was exerted on it. Documents produced by Wendy's (although not an incident report, which never surfaced) indicate that wear and abuse to the restaurant in general and in particular to the floor drains was observed by management in and around the time of the Deliz's fall. Furthermore, this damage was attributed to abuse by staff. Said evidence constitutes not only constructive notice, but actual notice of a potentially hazardous condition, which condition was not remedied by Wendy's.

In failing to maintain the integrity of the floor drain cover in the restroom, Wendy's breached its duty of care to Deliz and other business invitees like her. At the time of this incident, Deliz suffered from (and continues to suffer from) two significant medical conditions; she has scoliosis and muscular dystrophy. Notwithstanding these conditions, in January 2003, Deliz was ambulatory and capable of walking without aid. The fall at Wendy's complicated and indeed worsened Deliz's already compromised physical health. Deliz suffered serious injuries as a result of her slip and fall. Immediately following the incident, she was transported to Kent County Hospital where she remained for eight (8) days. Deliz underwent immediate surgery to her right tibia and was in a leg cast for three months. Deliz suffered lasting changes to her

physical health as a result of the injuries she sustained at the Wendy's premises. She now requires the aid of a walker when traversing great distances, and she continues to suffer pain associated with her tibial fracture. Taking Deliz as she was at the time of this incident, Wendy's is responsible for the worsening and aggravation of her pre-existing injuries. *Mangasarian v. Gould*, 537 A.2d 403 (R.I. 1988).

## IV. JURY INSTRUCTIONS

**Duty of the Court/Jurors**

Now that you have heard the evidence and the arguments, it is my duty to instruct you on the law applicable to this case. My job is to know the law and to explain it to you. Your duty is to decide the facts of the case based on the evidence, and then apply the law to those facts.

**Juror's Duty to Apply the Law**

As jurors, it is your duty to follow the law as I instruct you, and to apply the rules of law to the facts as you find them from the evidence. You are not to be concerned with the wisdom of any rule of law, regardless of any opinion you may have as to what the law ought to be. It is a violation of your sworn duty to base a verdict upon any other view of the law than that given in the instructions of the court; just as it would be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything but the evidence in the case. Justice through trial by jury depends upon the willingness of each individual juror to seek the truth as to the facts from the same evidence presented to all the jurors, and to arrive at a verdict by applying the same rules of law given to you in the instructions of the court. Your job is to accept the law as I explain it to you regardless of what you think the law is or ought to be.

**Consider Instructions As a Whole**

You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole. And, unless I otherwise instruct, you should consider each instruction to apply to both plaintiff and defendant.

**Bias or Prejudice or Sympathy**

You have been sworn as jurors in this case to try the issues of fact presented by the allegations stated in plaintiff's complaint and defendant's answer. You are to perform this duty without bias toward or prejudice to any party. Our system of law does not permit jurors to be governed by sympathy, prejudice, or public opinion. Both the parties and the public expect that you will carefully and impartially consider all the evidence in the case, follow the law as stated by the court, and reach a just verdict, regardless of the consequences. The race, gender, color, social standing or wealth of the parties, the witnesses or the attorneys should not influence you.

**Judge's Opinion**

Nothing I say in these instructions is to be taken as a suggestion that I have an opinion about the facts. It is your view of the facts that should determine your verdict. If, during the course of this trial, or in giving you these instructions, I have said or done anything that has caused you to believe that I was indicating an opinion about the evidence or the facts of the case, I instruct you that I intended to indicate no such opinion. You should not permit my conduct to have any influence whatsoever on your determination of what the facts are. It is the function of the jury exclusively to resolve questions of fact, and it is your duty to guard zealously against any usurpation of that function, however unintentional it may have been.

**Burden on Plaintiff**

In this case, like most, the law places the burden of proof on the plaintiff. All this means is that the law imposes upon the plaintiff the obligation or responsibility of proving her claim. The law requires that one who advances a proposition has the burden of sustaining its validity. Because the plaintiff is advancing the proposition that the defendants should be held responsible for some harm they caused to the plaintiff, it is the plaintiff who has the responsibility of producing evidence which leads you to believe that what the plaintiff claims is more likely true than not. The defendants, on the other hand, have no obligation to produce evidence concerning the plaintiff's claim. The defendants do not have to disprove what the plaintiff claims is true. The burden is on the plaintiff to prove each of the elements of her claim to you.

**SUPPORTIVE AUTHORITY**

*DiLibero v. Swenson*, 593 A.2d 42 (R.I. 1991); *Paramount Office Supply Co. Inc. v. D.A. MacIsaac, Inc.*, 524 A.2d 1099 (R.I. 1987); *Barbieri v. E.M. Young Co.*, 82 R.I. 382, 110 A.2d 263 (1954).

**Burden on Plaintiff – Damages**

The burden is on the plaintiff to prove by a fair preponderance of the evidence that she has suffered damages as a proximate result of defendant's negligence. The burden is also on the plaintiff to prove by a preponderance of the evidence the extent or amount to which she has suffered one of the following elements of damages: physical injury, medical expenses and pain and suffering. A plaintiff must prove by a fair preponderance of the evidence the particular element of damage that she suffered and the extent of such damage.

**SUPPORTIVE AUTHORITY**

*Tom Shaw, Inc. v. Derecktor*, 639 F.Supp. 1064 (D.R.I. 1986); *Jackson v. Choquette & Co.*, 78 R.I. 164, 80 A.2d 172 (1951); *Bruno v. Caianiello*, 121 R.I. 913, 404 A.2d 62 (1979); *Worsley v. Corcelli*, 119 R.I. 260, 377 A.2d 215 (1977).

**Preponderance of the Evidence**

In addition to imposing the burden of proof on a plaintiff, the law also requires that the proof and support of any given claim reach a certain level or standard. In this case the level of proof required is proof by a preponderance of the evidence. To prove something by a preponderance of the evidence means to prove that something is more likely so than not so. In other words, a preponderance of the evidence in the case means such evidence as, when considered with that opposed to it, has more convincing force, and produces in your minds a belief that what is sought to be proved is more likely true than not true. Where the evidence adduced either for or against a given proposition outweighs opposing evidence, that evidence is said to preponderate. So, proof by the preponderance of the evidence means proof by the greater weight of the evidence. In other words, a claim must be proved by evidence that weighs more persuasively in the minds of jurors. In proving her claim, a plaintiff must prove each and every element of that claim by a preponderance of the evidence.

**Consider All the Evidence**

I must caution you, though, that in determining whether the plaintiff has met the burden of proof imposed upon her by law, you should consider all of the evidence and not just the evidence which the plaintiff has produced. The jury's obligation is to decide the facts of the case based on its consideration of all of the evidence regardless of which party presented any given item of evidence during the trial.

**Weight of Evidence**

If, as a result of your deliberations, you find, that the evidence on the issue of liability weighs more on the side of the plaintiff then the plaintiff has sustained the burden of proving the case by a preponderance of the evidence and your verdict must be for the plaintiff. However, if you find that the evidence on the issue of liability weighs more on the side of the defendants then your verdict must be for the defendants. If you find that the evidence is so equally matched or equally balanced that you cannot say whether it weighs in favor of the plaintiff or the defendants, then the plaintiff has failed to meet the burden and standards of proof imposed upon her by law and your verdict must be for the defendant.

**Beyond a Reasonable Doubt**

You have probably heard about the level of proof required in a criminal case, which is proof beyond a reasonable doubt. Because this is a civil case we use a different level or standard of proof. Proof beyond a reasonable doubt does not apply in civil cases and you should put that standard out of your thoughts.

**Higher Level of Certainty Not Required**

To carry a burden of proof by a preponderance of the evidence/clear and convincing evidence does not, of course, require proof to an absolute certainty or even a near certainty.

Proof to an absolute or near certainty is seldom possible in any case. In a civil action such as this, it is proper to find that a party has succeeded in carrying the burden of proof on an issue if, after considering all the evidence in the case, the jurors believe that what is sought to be proved on that issue is more likely true than not/highly probable to be true.

**"If you find"**

As you listen to these instructions, you may hear me use the expression "if you find", or "if you decide" when I refer to the facts of the case or the evidence. When I do this I will be assuming that you will find certain facts to be proved. I make these assumptions only for the purpose of explaining the law to you and not to suggest how you should decide the case or the facts of the case. My assumptions are for purposes of discussion, in other words. Remember, before you can find something to be true, you must be persuaded, considering all of the evidence in the case, that the proposition at issue has been proved to be more probably true than not.

**Inferences Explained**

An inference is a deduction of fact that may be logically and reasonably drawn from other facts that have been proved at trial. As jurors you are permitted to make inferences of fact from those facts that you find have been proved in the case. In order for you to properly draw an inference, however, you must first find that the underlying facts from which the inference flows have been proved by a preponderance of the evidence and you must find that the facts to be inferred are, indeed, reasonably inferred. An inference is reasonable when the facts proved in the case point to one conclusion of fact as being more natural and plausible than other conclusions that might be drawn. For example, if you go to bed at night and when you wake up the next morning find there is snow on the ground, you can infer that it snowed at some point during the night, even though you did not actually witness it snowing during the night.

It is not required that all other possible conclusions inferable from the same basic facts be completely excluded but the conclusion of fact which the jury draws must be the more natural and plausible conclusion and must be founded in the trial evidence. On the other hand, an inference may be negated where other facts or conclusions are of such probability and degree as to render the proposed conclusion of fact no more natural and plausible than another.

## SUPPORTIVE AUTHORITY

R.I. Rule Evid. 301; *Labbe v. Hill Brothers, Inc.*, 97 R.I. 269, 197 A.2d 305 (1964).

**Spoiliation**

During this trial you have heard testimony that Wendy's failed to produce an incident report in connection with the Plaintiff's slip and fall. You have also heard evidence that these reports were routinely generated by Wendy's in connection with incidents similar to this one. When evidence is lost or destroyed we call it "spoliation" of that evidence. Under certain

circumstances the spoliation of evidence may give rise to an adverse inference that the missing evidence would have been unfavorable to the position of the party who destroyed/mutilated it.

Spoliation of evidence may be innocent or intentional, or somewhere between the two. It is the unexplained loss or destruction of relevant evidence that gives rise to an inference that the thing lost or destroyed would have been unfavorable to the position of the spoliator. If you find that the Defendants lost or destroyed the incident report in this case, then you are permitted to infer that the jury's consideration of that evidence would have been unfavorable to the Defendants' position in this case.

**SUPPORTIVE AUTHORITY**

*Mead et al. v. Papa Razzi et al.*, 899 A.2d 437 (R.I. 2006); *Blinzler v. Marriott International, Inc.*, 81 F.3d 1148 (1st Cir. 1996); *Rhode Island Hospital Trust National Bank v. Eastern General Contractors, Inc.*, 674 A.2d 1227 (R.I. 1996); Lawrence Solum and Stephen Marzen, *Admissions Implied from Spoliation*, 45 Yale Law Journal (1935); John MacArthur and Robert C. Vincent, *Truth and Uncertainty: Legal Control of the Destruction of Evidence*, 36 Emory Law Journal 1085 (1987); 31A C.J.S. Evidence §151-153.

**Elements of Negligence**

**Duty of Care**

The law of negligence is founded on the concept that under certain circumstances we each owe a duty of care to the other to act with care for the other's safety. In other words, our surrounding circumstances may require us to act with care toward others so that we don't jeopardize their safety. This duty is called a duty of care. Negligence is some conduct which breaches the duty of care owed by one person to another because of the circumstances.

In this case, the defendants owed a duty of care to the plaintiff. That duty was to refrain from acting negligently with respect to the plaintiff's safety. More specifically, the duty owed was to ensure that the premises of the Wendy's restaurant bathroom was in a safe condition for use by Wendy's patrons, including the plaintiff.

**Negligence Explained**

Generally, negligence is the failure of one entity, acting in a given set of circumstances, to exercise that degree of care for the safety/interest/property of another person that a reasonably prudent person would ordinarily exercise in the same or similar circumstances.

Negligence may result from *not doing* something that a reasonably prudent person *would do* or it may result from *doing* something that a reasonably prudent person *would not do* under the same or similar circumstances.

In other words, when a person either by acting or not acting in a given set of circumstances, fails to exercise the degree of care for the safety/interest/property of another person that a reasonably prudent person would have used under the same or similar circumstances, you have negligence. When we say that a person was acting with due and reasonable care, we mean that this person was not negligent.

**SUPPORTIVE AUTHORITY**

*Montuori v. Narragansett Electric Co.*, 418 A.2d 5 (1980).

**Standard of Care**

Negligence involves a lack of reasonable care that ordinarily should be exercised under the same or similar circumstances. We often call it ordinary care. Ordinary care is the care that a reasonably careful person would use under the circumstances that you find existed in this case.

Ordinary care is not an absolute term. It is a relative term. The degree of care required may vary with the circumstances. You see, the greater the risk of harm posed by the circumstances, the higher degree of care necessary to constitute ordinary care. So, in deciding whether ordinary care was exercised by a person in a given situation, that person's conduct must be viewed in light of all the circumstances as shown by the evidence. As the apparent risk of harm or injury increases, so too, must the degree of care to be exercised in order to constitute ordinary care.

The law does not say what a reasonably careful person would ordinarily do or would not do under the circumstances as shown by the evidence in this case. This is for you, the jury, to decide.

**SUPPORTIVE AUTHORITY**

*Hueston v. Narragansett Tennis Club, Inc.*, 502 A.2d 827 (R.I. 1986).

**Proximate Cause**

Negligence and the legal term "proximate cause" work together. We refer to "proximate cause" as a necessary element of negligence. The concept is that even if a person has been negligent that person will not be held responsible or liable unless that negligent conduct caused actual harm to someone else. If a person is negligent but that negligence is not a substantial or moving cause of some harm, then the person should not be held responsible for his or her negligence. Only where a person's negligence causes harm do we hold the person responsible for that harm. There must be a link or connection between the negligence and the harm in order to hold a person responsible.

The question is to what extent did the negligent conduct cause the event/injury/harm? The law requires that the connection or link between the negligent conduct and the resulting harm be *legally* sufficient, that is, something more than insubstantial or insignificant.

Proximate cause means a cause that in a natural, continuous and unbroken sequence produces an event or injury and without which the event or injury would not have occurred. The proximate cause of an event or injury is a substantial, primary or moving cause without which the event or injury would not have happened. Causes that are merely incidental are not proximate causes. Unless the defendants' negligence is a proximate cause of some harm caused to the plaintiff then the defendants cannot be held responsible to the plaintiff for negligence.

A cause that is a proximate cause may be the sole or only cause of an event or injury. Or, it may be one of two or more or even several causes of an event or injury some of which are a proximate cause and some of which are not. A cause is a proximate cause even if it comes together with or unites with some other cause and produces the event or injury. The test is whether the particular cause at issue is a substantial cause or whether it is merely incidental.

If you find the defendants were negligent you must then consider whether the negligence was a proximate cause of the plaintiff's injuries.

**SUPPORTIVE AUTHORITY**

*Wells v. Uvex Winter Optical, Inc.*, 635 A.2d 1188 (R.I. 1994); *Ouellette v. Carde*, 612 A.2d 687 (1992); *Hueston v. Narragansett Tennis Club Inc.*, 502 A.2d 827 (R.I. 1986); *Schenck v. Roger Williams General Hospital*, 119 R.I. 510, 382 A.2d 514 (1978); *Restatement (Second) of Torts*, § 433 (1965).

**Special Relationships – Duty to Act for the Protection of Others**

Generally, the fact that a person realizes or should realize that his/her action is necessary for the aid or protection of another does not in itself impose upon him/her any duty to act. There are, however, special circumstances in which a person will have a duty of affirmative action for the aid or protection of another.

In this case, the parties had a special relationship. In particular, the plaintiff was a customer, or business invitee, of the defendants' and was legally on the premises. Under the circumstances of this case, the defendants owed a duty to plaintiff to protect the plaintiff against unreasonable risk of harm arising from defendants' own conduct. Defendants were required to exercise ordinary care in discharging that duty and in acting toward plaintiff's safety. In other words, the defendants were required to exercise that degree of care that a reasonably prudent person would exercise under the same or similar circumstances. However, the greater the risk of harm presented by the circumstances, the higher degree of care necessary to constitute ordinary care.

The law does not say what a reasonably careful person would ordinarily do or would not do under the circumstances as shown by the evidence in this case. This is for you, the jury, to decide.

**SUPPORTIVE AUTHORITY**

*Restatement (Second) of Torts*, §314 (1965).

**Duty of Care Generally**

Ladies and gentlemen, now that I have explained the general concepts of negligence to you I will take a moment to explain the law of negligence as it relates to situations similar to this case. This area of law is called the law of premises liability and it governs the relationship between landowners or others in control of property and those who are reasonably expected to come onto the property. The plaintiff in this case was on the property at the invitation of/with the permission of the defendants. We call the plaintiff an "invitee." As such, the defendants owned a duty to the plaintiff.

Under the law, a [property owner/one in control of property] has a general duty to use reasonable care in seeing that the premises are free from dangerous conditions or defects that might cause injury to those who enter upon the property. Within the context of that general duty a [property owner/one in control] is also under a duty or obligation to keep and maintain the premises in a safe condition and to use reasonable care in inspecting the premises so as to discover dangerous conditions or defects. A [property owner/one in control] also has a duty to use reasonable care to cure or remedy those conditions so that the premises are made safe. Where the condition or defect is one that cannot be remedied, then the [property owner/one in control] has a duty to use reasonable care to adequately warn invitees of the potential danger. In other words, a landowner has a duty to use reasonable care to keep and maintain the premises in a safe condition and to protect those individuals reasonably expected to be on the premises against the risks to be apprehended from a dangerous condition existing on the premises.

In this case, the landowner owed a duty to the plaintiff to exercise reasonable care to keep and maintain the premises in a reasonably safe condition for the purposes intended by plaintiff's visit on the defendant's premises.

**SUPPORTIVE AUTHORITY**

*Mariorenzi v. DiPonte*, 114 R.I. 294, 333 A.2d 127 (1975), *Cofone v. Narragansett Racing Association*, 103 R.I. 345, 237 A.2d 717 (1968).

**Damages General Instruction**

If you find that the defendants are liable to the plaintiff for the incident that occurred, then you must consider the question of damages. Damages are defined in law as that amount of money that will compensate an injured party for the harm or loss that she has sustained. The rationale behind compensatory damages is to restore a person to the position she was in prior to the harm or the loss. Compensatory damages, then, is the amount of money which will replace, as near as possible, the loss or harm caused to a person.

When you assess damages, you must not be oppressive or unconscionable, and you may assess only such damages as will fairly and reasonably compensate plaintiff insofar as the same may be computed in money.

**SUPPORTIVE AUTHORITY**

*Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct.2362 (1975).

**Elements of Compensatory Damages**

**Medical Expenses**

Plaintiff is entitled to recover the reasonable expense of her medical care, treatment and attendance as an element of damages. In awarding damages for medical care, treatment and attendance you must consider whether the plaintiff has proved two things. First, whether the medical costs claimed by plaintiff were medically reasonable. Second, whether those costs were necessarily incurred in providing care, treatment and medical attendance. In assessing damages, you should consider evidence that establishes that plaintiff's medical treatment was necessary as a result of the incident/accident, and you may consider evidence that establishes the reasonable charge for that treatment.

**SUPPORTIVE AUTHORITY**

*Markham v. Cross Transportation, Inc.*, 376 A.2d 1359 (R.I. 1977); *Oresman v. G.D. Searle & Co.*, 388 F.Supp. 1175 (D.R.I. 1975); *Lebon v. B.L.&M Bottling Co.*, 114 R.I. 750, 339 A.2d 272 (1975).

**Pain and Suffering**

The plaintiff is entitled to be compensated for the conscious pain and suffering that she endured as a result of the incident.

I will define pain and suffering for you. Pain means physical pain, the kind resulting from a physical impact or injury. It includes what we ordinarily think of as physical pain as well as discomfort, stiffness, and restriction of bodily motion that is caused by the pain or discomfort brought about by moving. Pain must be conscious pain, that is, something that the plaintiff was aware of. The law does not allow a jury to award damages for pain to a person while that person is unconscious.

Suffering, on the other hand, can be equated with what we sometimes call the mental anguish that arises from physical pain or injury to the body. Suffering means recognizing the pain, the danger resulting from the pain, the knowledge that the pain and treatment for it will continue. If you find that the plaintiff has proven that in addition to physical pain, she has also experienced fright, anguish, nervousness, grief, anxiety, worry, humiliation, embarrassment, shock or terror, the plaintiff is entitled to recover for this mental suffering.

In awarding any damages to the plaintiff for pain and suffering, you must be fair and reasonable. And, it must be grounded in the evidence and not based upon speculation or conjecture. Nor may you arbitrarily pick some amount. Your award for pain and suffering should be based on the evidence that has been presented to show just how much pain and suffering the plaintiff has endured as a result of his/her injuries.

**SUPPORTIVE AUTHORITY**

*Arlan v. Cervini*, 478 A.2d 976 (R.I. 1984); New York Pattern Jury Instruction Supplement §2:280; 5 Am. Jur. Trials §95; Jacob A. Stern, *Stern on Personal Injury Damages*, §§2.2-2.3 and 2.7-2.8 (1991).

**Considerations in Awarding Damages for Pain and Suffering**

The plaintiff is entitled to be compensated for the pain and suffering she endured as a result of the incident. There is no particular formula by which to compute damages for a plaintiff's pain and suffering. There are no objective guidelines by which you can measure the money equivalent of this element of injury; the only real measuring stick, if it can be so described, is your collective and enlightened conscience. You should consider all the evidence bearing on the nature of the injuries, the certainty of future pain and the severity and likely duration thereof.

In determining what amount to award the plaintiff for pain and suffering, you should consider all of the facts and circumstances proved at trial including:

the type of injuries the plaintiff sustained;

the extent and severity of those injuries;

the length of time the plaintiff sought and received medical treatment;

the nature of the medical treatment plaintiff received;

whether the plaintiff’s injury was temporary or permanent.

You may also consider the testimony of the plaintiff in describing the nature of her pain, the intensity of the pain and how the pain affected the plaintiff's ability to do everyday activities. You may also consider any other evidence showing any objective manifestations of pain such as the medical records, other exhibits and testimony of the witnesses.

**SUPPORTIVE AUTHORITY**

*Proffitt v. Ricci*, 463 A.2d 514 (R.I. 1983); *Hayhurst v. LaFlamme*, 441 A.2d 544 (R.I. 1982); *Bruno v. Caianiello*, 121 R.I. 913, 404 A.2d 62 (1979); *Worsley v. Corcelli*, 119 R.I. 260, 377

A.2d 215 (1977); Jacob A. Stern, *Stern on Personal Injury Damage*, §§2.2-2.3 and 2.7-2.8 (1991).

**Bodily Injury and Impairment**

Plaintiff is entitled to be compensated for the bodily injury that she sustained as a proximate result of the accident and for any impairment or disability that resulted from those bodily injuries. How much, if anything, she should be compensated for bodily injury and impairment is for the jury to decide.

This injury to the body is different from the pain and suffering that you may find was caused by the bodily injury. I have discussed pain and suffering with you. In determining what amount to award the plaintiff for bodily injury and resulting impairment, there are a number of factors that you should consider including:

the type of physical injuries the plaintiff sustained;

the extent and severity of those injuries;

whether the injuries are permanent or temporary;

the length of time the plaintiff required or will require medical treatment or care;

the nature of the medical treatment or care the plaintiff requires or will require;

the degree to which the physical injury and impairment have affected or interfered with the plaintiff's day-to-day functioning including his/her ability to enjoy his/her life, relationships and ordinary activities; and

the degree to which the physical injury and impairment will affect or interfere with the plaintiff's day-to-day functioning in the future including his/her ability to enjoy his/her life, relationships and ordinary activities in the future.

You should consider these factors together with all of the facts and circumstances that you find were proved at trial.

**Aggravation of Pre-Existing Condition**

The defendant must take the plaintiff as they find the plaintiff at the time of the incident. If the plaintiff had a physical condition prior to the accident that caused plaintiff to endure more pain and suffering as a result of the accident than an ordinary person in good health would have endured, the defendants nevertheless are liable to the plaintiff for all the pain and suffering that

resulted from the defendants' negligence. This includes all of the pain and suffering resulting from the aggravation of a pre-existing medical condition.

It is unimportant that the condition pre-existed the accident. The defendants are liable for the natural and probable consequences of their negligence including aggravation of a pre-existing condition.

**SUPPORTIVE AUTHORITY**

*Mangasarian v. Gould*, 537 A.2d 403 (R.I. 1988); *Lebon v. B.L.& M. Bottling Co.* 114 R.I. 750, 339 A.2d 272 (1975); *Golden v. R.L. Greene Paper Co.* 44 R.I. 226, 116 A. 577 (1922).

## V. LENGTH OF TRIAL

Plaintiff anticipates this trial will take approximately three (3) days.

Plaintiff,
Ruth Deliz,
By her Attorneys,

/s/ Raymond A. Marcaccio

Raymond A. Marcaccio, Esquire (#3569)
Julie P. Hamil, Esquire (#6887)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax
ram@om-rilaw.com
jph@om-rilaw.com

## CERTIFICATION

I hereby certify that the foregoing *PRETRIAL MEMORANDUM* was filed electronically with the United States District Court for the District of Rhode Island and is available for viewing and downloading from the Electronic Case Filing system. The following attorney received service by electronic means on this 16th day of January 2007.

Michael R. De Luca, Esquire
mrd@gsm-law.com

/s/ Julie P. Hamil